UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NICHOLAS J. PEPPER,
    Plaintiff,

v.

BROWN UNIVERSITY and SHEILA
COLEMAN, in her individual/official
capacity as Director of Human
Resources,
    Defendants.

C.A. No. 21-248-JJM-PAS

**MEMORANDUM AND ORDER**

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

    Nicholas J. Pepper brings this employment discrimination case against Brown University and Sheila Coleman, its Director of Human Resources. Brown fired Mr. Pepper after he violently assaulted a co-worker. Mr. Pepper brings claims under the American with Disabilities Act ("ADA") for hostile work environment, failure to make reasonable accommodations, and retaliation. Because there are no genuine issues of material fact, and because Brown and Ms. Coleman are entitled to judgment as a matter of law, the Court GRANTS Defendants' Motion for Summary Judgment. ECF No. 40.

**I.    FACTUAL BACKGROUND**

    Mr. Pepper worked at Brown as a food service worker from September 2017 until Brown fired him in December 2019. He was a "temporary worker" from September 2017 through May 2018—obtaining a permanent position in September

2018. Mr. Pepper performed his job duties and fulfilled all his responsibilities through October 2019.

In October 2019, Mr. Pepper notified management that a co-worker had engaged in harassing behavior toward him. They had worked together without conflict for about two years. The co-worker was a 17-year employee of Brown Dining Services, who never had a work complaint lodged against him. Mr. Pepper alleged that the co-worker was purposely agitating the symptoms he experienced because of his ADHD.[1] He claimed the co-worker was following him around, "antagonizing" symptoms of his medical condition, including what he called an increased sensitivity to sound waves. He claimed that he "specifically reported that he was being targeted and harassed based on observable symptoms of his medical condition(s), more specifically hypervigilance." ECF No. 42-1 at 4. He told management that the co-worker would try to sneak up on him and make loud noises in the workplace. Brown assured Mr. Pepper that they would speak with the co-worker, that he and this co-worker would be kept on opposite sides of the building, and that Dining Service personnel would closely monitor their interactions.

After this initial meeting, Sheila Coleman, Director of Dining Services Human Resources for Brown met with Mr. Pepper. Mr. Pepper said he was suffering from stress and anxiety because of his interactions with this co-worker. She advised Mr. Pepper to speak with a Leave and Accommodation Manager for Brown who was

---

[1] During an interview in 2018, Mr. Pepper told his supervisors that he had Attention-Deficit/Hyperactivity Disorder ("ADHD") and that he might need instructions repeated several times.

2

responsible for overseeing employee leave and accommodations-related issues, to begin the process of determining whether his medical condition qualified for an accommodation. The Leave and Accommodation office informed Mr. Pepper that they use a third-party administrator to handle disability-related accommodations—Broadspire—and urged him to contact them.

Mr. Pepper applied for a workplace accommodation through Broadspire requesting the ability to wear headphones while working and a transfer to a different dining room.[2] He enclosed a copy of his neuropsychiatric evaluation that showed his ADHD diagnosis. Broadspire asked Mr. Pepper to sign medical release authorizations and other forms. Mr. Pepper did not provide the additional requested forms or information.

Brown managers also met with the co-worker who admitted he had engaged in some of the alleged behavior as a joke but said he did not realize his pranks were upsetting Mr. Pepper and that he did not mean to cause any harm. The managers told the co-worker that his behavior was unacceptable, would not be tolerated, and warned him that he was to cease any such antics, which should not be happening in the workplace at any time.

After the Thanksgiving break, Brown attempted to limit the interactions between Mr. Pepper and the co-worker while it finalized plans to find a new workplace location for Mr. Pepper. At the end of his shift on the first day back to work after the holiday break, Mr. Pepper, without provocation, physically attacked

---

[2] Mr. Pepper claims that Broadspire initially lost his file.

the co-worker. He grabbed the co-worker from behind, placed him in a chokehold, and struck him in the face and head. After placing him on administrative leave, and investigating the incident, Brown fired Mr. Pepper for violating Brown's Workplace Violence Policy.[3]

## II. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure controls in deciding whether a party is entitled to summary judgment. Fed. R. Civ. P. 56. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* More particularly,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When deciding whether the Court should grant summary judgment, the Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Barbour v. Dynamics Rsch. Corp.*, 63 F.3d 32, 36 (1st Cir. 1995) (citation omitted). As alluded to, there must first be no genuine issues of material fact. "[M]ere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that

---

[3] Mr. Pepper filed a grievance with the Union, and in accordance with the Collective Bargaining Agreement, a Step 3 Hearing was held. After a full hearing, the hearing officer issued a written decision upholding the termination.

there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Thus, the issue must be genuine and material. *See id.* "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party ... '[M]aterial' means that the fact is one that might affect the outcome of the suit under the governing law." *Morris v. Gov't Dev. Bank of P.R.*, 27 F.3d 746, 748 (1st Cir. 1994) (internal quotation marks omitted) (citations omitted).

Additionally, the moving party must have a right to judgment as a matter of law. The moving party is "entitled to a judgment as a matter of law [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323 (internal quotation marks omitted) (citations omitted). The Court decides this latter element of the summary judgment standard by evaluating "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed." *Anderson*, 477 U.S. at 252 (alteration in original) (emphasis in original) (internal quotation marks omitted) (citation omitted).

## III. DISCUSSION

Mr. Pepper filed a complaint pro se,[4] setting forth sixteen causes of action based on state and federal laws. The claims can be categorized into three main

---

[4] Because Mr. Pepper is pro se, the Court has interpreted his filings liberally. *Institito de Educacion Universal Corp. v. U.S. Dep't of Educ.*, 209 F.3d 18, 23 (1st Cir. 2000).

5

violations of the ADA—those alleging a hostile work environment, failure to accommodate his disability, and retaliation.

### A. Hostile Work Environment

To establish a hostile work environment, a plaintiff must show that his "workplace [was] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of ... [his] employment and create an abusive working environment." *Quiles–Quiles v. Henderson*, 439 F.3d 1, 7 (1st Cir. 2006) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "Among the factors relevant to this inquiry are the severity of the conduct, its frequency, and whether it unreasonably interfered with the victim's work performance." *Id.* (citing *Harris*, 510 U.S. at 23). "[A]n employee claiming harassment must demonstrate that the hostile conduct was directed at [them] because of a characteristic protected by a federal anti-discrimination statute." *Id.* (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).

The Court will assume, arguendo, that the co-worker's actions rise to the level of a hostile work environment, although the law is clear "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment' to establish an objectively hostile or abusive work environment." *Colon-Fontanez v. Municipality of San Juan*, 660 F.3d 17, 44 (1st Cir. 2011) (quoting *Oncale*, 523 U.S. at 82). The Court need not decide, because Mr. Pepper's claim for a hostile work environment fails for lack of causation.

Mr. Pepper's disability is ADHD.[5] There is no evidence that the conduct he alleges caused a hostile work environment was directed at him because he had ADHD. There is no evidence that the co-worker's joking, obnoxious, harassing, and even juvenile behavior targeted Mr. Pepper because he suffers from ADHD. In fact, Mr. Pepper testified that his co-worker did not know he had ADHD or any other disability. ECF No. 41 ¶¶ 12-13. And when supervisors told the co-worker that his actions were distressing to another employee, he professed that he had no intention of and did not realize that he was upsetting anyone. *Id.* ¶ 26. There is simply no evidence that the co-worker "harbored any *disability-based discriminatory animus*" toward Mr. Pepper. *Brader v. Biogen, Inc.*, 983 F.3d 39, 63-4 (1st Cir. 2020) (emphasis added). At best, Mr. Pepper presents evidence of his co-worker's obnoxious behavior—but nothing ties this behavior to his alleged disability and is therefore not actionable conduct. Therefore, Mr. Pepper's Counts 2, 5, 8, 11, and 14 for ADA hostile work environment claims under federal and state law are DISMISSED.

---

[5] Mr. Pepper alleges that he has an anxiety disorder disability. There is no evidence that Mr. Pepper met the diagnostic criteria for an anxiety disorder and he has not been diagnosed as such following a comprehensive psychological evaluation. Therefore, Mr. Pepper's self-described anxiety disorder disability is not a "characteristic protected by an anti-discrimination statute," as required to establish liability on a hostile work environment claim under the ADA. *Ríos-Jiménez v. Principi*, 520 F.3d 31, 44 (1st Cir. 2008) (quoting *Quiles–Quiles*, 439 F.3d at 7-8).

### B. Reasonable Accommodations

Next, the Court turns to Mr. Pepper's claims in Counts 1, 4, 7, 10, and 13 alleging that Defendants failed to reasonably accommodate his disability. A 2009 amendment to the ADA emphasizes that the ADA's objectives are to provide "a clear and comprehensive national mandate for the elimination of discrimination" and "clear, strong, consistent, enforceable standards addressing discrimination" by reinstating a broad scope of protection to be available under the ADA. 42 U.S.C. § 12101(b). One of those protections is that a disabled person can request a reasonable accommodation in order to continue working and a cause of action under the ADA can arise if the employer fails to make reasonable accommodations to the known limitations of the employee. 42 U.S.C. § 12112(b)(5)(A).

To establish a claim for failure to accommodate, a plaintiff must produce sufficient evidence for a reasonable jury to find that (1) she was disabled within the meaning of the ADA, (2) she was a "qualified individual," and (3) the defendant, despite knowing of her disability, "did not reasonably accommodate it." *Pena v. Honeywell Int'l, Inc.*, 923 F.3d 18, 31 (1st Cir. 2019) (quoting *Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 107 (1st Cir. 2005); 42 U.S.C. § 12111(8)). Mr. Pepper fails to produce sufficient evidence to establish all three factors.

#### 1. Was Mr. Pepper Disabled under the ADA

To be entitled to a reasonable accommodation, the employee must first prove that he was disabled under the ADA. The ADA defines a disability as "(1) a physical or mental impairment that substantially limits one or more of the major life activities

8

of an individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." *Wright v. CompUSA, Inc.*, 352 F.3d 472, 475–76 (1st Cir. 2003) (citing 42 U.S.C. § 12102(2)); *see also Bailey v. Georgia-Pac. Corp.*, 306 F.3d 1162, 1167 (1st Cir. 2002). The First Circuit has held that a diagnosis of ADHD alone cannot by itself establish an ADA claim, absent a showing of a substantial limitation of a major life activity. *Wright*, 352 F.3d at 477.

Mr. Pepper alleged in his Amended Complaint that he has a disability that limits one or more life activities. ECF No. 24 ¶ 4. The discovery process, however, has not produced sufficient evidence to establish that his ADHD causes a substantial limitation of a major life activity. He testified that he could not get along with a single co-worker, but "[m]ere trouble getting along with coworkers is not sufficient to show a substantial limitation." *Weaving v. City of Hillsboro*, 763 F.3d 1106, 1113 (9th Cir. 2014) (quoting *McAlindin v. Cty. of San Diego*, 192 F.3d 1226, 1235 (9th Cir. 1999)). Moreover, there is no evidence that his ADHD limited any life activity related to his employment. *See Calef v. Gillette Co.*, 322 F.3d 75, 83 (1st Cir. 2003). In fact, the psychologist who diagnosed his ADHD concluded that he was "capable of learning, achieving and performing well at his place of employment." ECF No. 41 ¶ 80.

The Court finds that there is insufficient evidence in this record that a jury could determine that Mr. Pepper was disabled under the ADA, therefore his claims that he was denied a reasonable accommodation fail.

### 2. *Was Mr. Pepper a "Qualified Individual" Looking for a Reasonable Accommodation?*[6]

A "qualified individual" under the ADA is a person "who, with or without reasonable accommodation, can perform the essential functions" of her job. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) (quoting 42 U.S.C. § 12111(8)). Defendants argue that complying with Brown's Workplace Violence Policy is an essential function of the job and because Mr. Pepper's unprovoked assault on a co-worker violated that policy, he could not do the job. They also argue that any accommodation that Mr. Pepper suggested was not reasonable.

There is no dispute that Mr. Pepper violated Brown policy by assaulting his co-worker. Even if Mr. Pepper could show that he was a qualified individual under the ADA otherwise capable of doing his job, his claim would also fail because the requested accommodation was not reasonable. Mr. Pepper asked to be transferred to another worksite away from his co-worker.[7] There is a Collective Bargaining Agreement ("CBA") in place for Brown's Dining Services that includes a seniority system and considering his co-worker's long tenure, it is likely that the CBA would prohibit any transfer. *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 394 (2002) (showing "that a requested accommodation conflicts with the rules of a seniority system is ordinarily [sufficient] to show that the accommodation is not 'reasonable[,]'"

---

[6] The Court need go no further in its analysis but will discuss the remaining elements to fully explain the outcome.

[7] Mr. Pepper also asked to be allowed to wear headphones while on the job. Brown denied the headphone request because Mr. Pepper's job included regularly interacting with students and other staff.

entitling a defendant to summary judgment.). Here, there is no evidence that the accommodation of a transfer to a different worksite was reasonable because Mr. Pepper failed to show that it could be accomplished considering the seniority system mandated by the CBA. As such, there is no dispute that Mr. Pepper was not a qualified individual, nor did he request a reasonable accommodation.

### 3. Did Brown Reasonably Accommodate Him?

Finally, even if Mr. Pepper were found disabled under the ADA, and even if he met the definition of a "qualified individual" and the accommodations he requested were reasonable, his claim would still fail because, even though Brown did not actually accommodate his ADHD, Brown acted consistent with the ADA in its dealings with Mr. Pepper's request for accommodation.

There is no evidence in the record to show that Brown acted unreasonably in response to Mr. Pepper's request for accommodation. Brown gave him information about the Leave and Accommodation process, instructed him to contact Broadspire, and told the co-worker to stop any inappropriate behavior and to stay away from Mr. Pepper. It is undisputed that Mr. Pepper fell short of his obligations to participate in the process by failing to submit the documentation that Broadspire needed to consider his accommodation request. ECF No. 41 ¶¶ 47-50; *see Enica v. Principi*, 544 F.3d 328, 339 (1st Cir. 2008). In fact, Brown's ultimate response to the Mr. Pepper's request for an accommodation will never be known because of Mr. Pepper's own violent actions in the workplace resulting in his termination.

11

Therefore, Mr. Pepper's Counts 1, 4, 7, 10, and 13 for ADA reasonable accommodation claims under federal and state law are DISMISSED.

### C.  Retaliation

Mr. Pepper also alleges retaliation, ostensibly arguing that Brown retaliated against him by firing him and perpetuating a hostile work environment because he raised discrimination due to his ADHD. To make out a claim for retaliation under the ADA, an employee must prove that (1) he engaged in protected conduct, (2) he suffered adverse employment action, and (3) there was a causal connection between his conduct and the adverse action. *Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 177 (1st Cir. 2003) (citing *Soileau v. Guilford of Me., Inc.*, 105 F.3d 12, 16 (1st Cir. 1997)). Mr. Pepper alleges that the protected conduct here is his making complaints of unlawful harassment which subjected him to additional retaliatory harassment.

These claims fail for the same reasons his hostile work environment claims fail. There is no causal connection between his ADHD disability, any protected conduct, and adverse employment action, whether that is his termination or any alleged additional harassment after he first reported his co-worker's conduct. First, there is no evidence that the co-worker's behavior continued beyond the point that Brown supervisors spoke with the co-worker about the effect his behavior was having on Mr. Pepper. Mr. Pepper testified that, after he informed Brown of the co-worker's harassment, he observed the co-worker making a sandwich at his station, he followed him around the cafeteria during their shifts, get himself a drink when Mr. Pepper was on the beverage station, and stand uncomfortably close to him. ECF No. 41 ¶ 34.

None of these behaviors rises to the level of "objectively intolerable" harassment. *Feliciano-Hill v. Principi*, 439 F.3d 18, 27 (1st Cir. 2006) (quoting *Marrero v. Goya of Puerto Rico, Inc.*, 304 F.3d 7, 28 (1st Cir. 2002)). And there is no evidence that Mr. Pepper reported to Brown any post-complaint conduct. ECF No. 41 ¶¶ 37-40.

In fact, there is evidence that Brown took supportive action on his behalf when Mr. Pepper reported his co-worker's bothersome conduct. ECF No. 41 ¶¶ 26-28. There is simply no evidence that either Brown or the co-worker "harbored any *disability-based discriminatory animus*" toward Mr. Pepper after he complained. *Brader*, 983 F.3d at 64 (emphasis added). The bottom line is that there is no causal connection between Mr. Pepper's disability and his complaints about harassment and there is no evidence of post-complaint retaliation that rises to the level protected by state and federal law. Therefore, Mr. Pepper's Counts 3, 6, 9, 12, and 15 for ADA retaliation claims under federal and state law are DISMISSED.

### D.   Disparate Treatment

Finally, Mr. Pepper alleges disparate treatment under the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28-5-7 ("RIFEPA"). Defendants move for summary judgment on grounds like those argued on the other claims.

To prove a disparate treatment claim under the RIFEPA, Mr. Pepper must show that: he is disabled; he was able to perform the essential functions of his job with a reasonable accommodation; and that he suffered an adverse employment action because of his disability. *Kriegel v. R.I. Dep't of Corr.*, 266 F. Supp. 2d 288, 299 (D.R.I. 2003). As the Court has concluded in previous sections, Mr. Pepper's claim

fails because there is no evidence that Brown intended to discriminate against him under any federal or state law or terminated him because of his ADHD. Brown addressed his concerns with the co-worker's behavior, offered resources to determine whether an accommodation was appropriate, and was in the process of adjusting Mr. Pepper's employment within the confines of the CBA to keep him and the co-worker separated. Before any of that remediation could be accomplished, Mr. Pepper assaulted the co-worker in an unprovoked attack, violating Brown's policy and meriting termination. Even if Mr. Pepper could raise disputed issues as to this claim, Brown's reason for terminating him was clearly not a pretext for discrimination but necessitated by his own violative conduct. Therefore, Mr. Pepper's Count 16 for disparate treatment under R.I. Gen. Laws § 28-5-7 is DISMISSED.

## IV.   CONCLUSION

The Court finds that there are no genuine issues of material fact as to any of Mr. Pepper's claims and that Defendants are entitled to judgment as a matter of law. Therefore, the Court GRANTS Defendants' Motions for Summary Judgment. ECF No. 39.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

November 2, 2023